But I thought you deserved a little bit more time. So would you like to start with 8 and reserve 2? Yes, Your Honor, that would be fine. Okay, put 8 on the clock, and you'll have 10 minutes if you like, Counselor. Okay, thank you for coming in today. And I'm Adam Siegel on behalf of the IATSE pension plan. Our pension plan participant, Lupe Carmona, retired while married to Janice Carmona, and several years later they were divorced. At the time of retirement, the form of pension benefit was the qualified joint survivor annuity that was required to be the default type of pension under all ERISA plans. They were later divorced, and Lupe then later married Judy Carmona, who ever since has been trying to oust Janice Carmona from her status as the surviving spouse on the QJSA. Can I clarify just one thing at the beginning of your argument? My understanding is that Lupe, before he retired, checked a box, signed a form that allowed survivor benefits. Is that right? Not exactly. There are other forms, and there are other elections made there. What he did was not choose to waive the default type of pension and acknowledge that he would be receiving the default type of pension and identify Janice as the spouse of the default type of pension. And I only parse that because you don't designate who you're married to at the time of your retirement. You're either married or you're not. And Judy has come at this three separate ways. First, she's come at this with an attempted quadro. Second, she's attempted to argue that Janice waived any interest in the divorce between Janice and Lupe after the survivor benefits. And third, she has tried to obtain those benefits or the equivalent of them after received by Janice through a state court constructive trust method. And the plan's position here, and it's counterclaim for declaratory judgment, is that all three methods are preempted by arrest. Dealing with the quadro first, it took a while to sort out the cast of characters here. Let me find out specifically, what is your client's interest in this? Why does it care where the money winds up? Well, the trustees of the pension plan are charged and required as a matter of fiduciary duties to enforce the plan as written and in compliance with the law. He cannot stand by and allow benefits to be improperly alienated or diverted in violation of ERISA or the plan documents. Eventually, although we weren't aware of the full nature of the proceedings between the other parties, we were eventually sued regarding this dispute. And as a counterclaim, simply said, we assert an action for declaratory judgment. This all looks preempted. And, of course, the motion to dismiss us from that case was denied, and there's no cross-appeal challenging that. Well, I'm not questioning standing so much as motivation, trying to figure out why do parties take given positions, because that might explain why it is the law does or does not provide for something. Is there a reason from the trust perspective that permitting a change in the identification of the spouse after retirement date, which is the problem posed here, that that's disruptive or in some fashion disturbing to your clients? Well, as I said, it violates the plan and it violates ERISA, and we're charged with following the law. We all like to violate the law, but at least you can tell me why it is your client is willing to spend a whole lot of money in order to defend a given position. Is there an actuarial reason? Is there a calculation? Why is the trust really interested in this? Well, I mean, you've hit on it exactly. At the time that we set up and calculated this pension to pay it, it was based on the life expectancy of Lupe, the life expectancy of Janice, and the difference between their ages. And those are the factors that are used to determine all of the joint survivor pensions we use and all our actuarial projections for the entire plan. And that's done at one point in time. Is retirement? Yes. That's exactly right. So to change the identification of the spouse after that upsets the calculations that have been already made. In addition, the surviving annuity is a life annuity for the life of Janice. Whose death will cut it off? We don't know because ERISA doesn't speak to it and the plan doesn't speak to it. It throws into a morass the certainty that we had under ERISA as it should be applied, and perhaps the dollars are small in this case. Why does that in the terms of a constructive trust? I mean, you pay the money out. You pay it in the trust. You pay it according to the terms of the plan. Why does the imposition of a constructive trust alter that or muddy it from your perspective? Well, because we are aware of what's going on there, and as part of those constructive trust orders, Janice has been directly ordered to communicate to the plan and tell the plan to redirect that money into a trust account. So the dollar's going out. I'm just saying. That's true. But at the end of the day, if you are a fiduciary, this is not a contractual relationship. This is not an arm's-length relationship. You're not permitted to look the other way and say, as a business matter, it's not costing us any money. Who cares? You are an ERISA fiduciary charged with applying that plan and paying benefits only to those who are entitled to receive them. You cannot cavalierly say it costs us nothing more. Why is it cavalier when you've got a state court order? Because the state court order is preempted and calls it's an end run. It was a deliberate end run. Those state court constructive trust orders are not. Until it's overturned, though, you have to file it, wouldn't you agree? I didn't hear the first part of the question. Until it's overturned or some other court takes different action, you can't just simply ignore the state court order. That's not your position. We can. We're not party to the state court orders. They're not enforceable against us. And if Judy had attempted to enforce them directly against us when the plan rejected her attempted quadro and sued us in court, this would have been years ago brought here on these issues. As a matter of fact, Judy avoided confronting the true sophisticated ERISA client for years messing around in state court because what was set up was an end run around ERISA. So it's not enough to say it doesn't cost the plan any more money. The plan has to do what's right. How important to your position is it that the designation of Janus was irrevocable? Well, it impacts the quadro in the sense that the quadro cannot qualify because it therefore calls for a benefit that's not provided by the plan. So you do concede that under appropriate circumstances they may, in your view, not be met here, that a quadro can alter a designation? No. Not if you're talking about who is, as a matter of fact, a surviving spouse as opposed to a pure gratuitous designation. So in one certain – I'm sorry. I don't want my answer to be taken incorrectly. In one circumstance, in this Court's Hamilton decision it explained, in one circumstance a change can be made to who ultimately is the survivor, treated as a survivor, and that is in favor of a former spouse who obtains the quadro before the retirement annuity start date. So there is a circumstance where who gets that can be altered. In that case, the plan knows on the day it calculates it that it's got a quadro for so-and-so for 50 percent of it will be calculated on her life or his life, as the case may be, and the current spouse is so-and-so. An X percentage, according to the quadro, will be then converted into a life annuity for that person's life. We have the reliance. So no post-calculation, post-retirement alteration of beneficiary designation even by a quadro? No. I don't see law supporting that. I know that – Isn't that the Fourth Circuit position in Hopkins or whatever it is? Well, yeah, there's Hopkins and there's several other cases that – Isn't that position a little inconsistent with our decision in Tice? No. Tice did not involve a QPSA. The individual in Tice was never married to either of those two individuals. One was his girlfriend from years gone by. The facts of Tice are different, but the logic of Tice basically disclaims the logic of Hopkins by interpreting the meaning of with respect to as not being limited to two. So there's some tension at least between the position that we took in Tice and the position of the Fourth Circuit. There's not, and here's why. And Note 6 of Tice explains this pretty well. The death benefits at issue in Tice were gratuitous death benefits under a single-life pension scenario that could have been designated to be paid to anyone on earth. They were not the QPSA for which ERISA says who will get it. I see my time has run. Okay. You've saved two minutes for rebuttal. Thank you. Counsel? Mr. Friedman? Yes, Your Honor. I would like to say two minutes also. All right. If possible. That's fine. So put eight on the clock. Thank you, Your Honor. My name is William Emerson Friedman, and I'm the attorney for Janice Kester, also known as Janice Carmona. The sequence of events are very important in this case. However, the Court has brought up the case of Tice. Tice does not apply to the facts in this case, and they even mention that specifically. I think we're aware there's a footnote that says that recognizes that the precise beast we're dealing with here was not before them. But the question I think both my friend from Hawaii, Judge Clifton and I both have, is doesn't Tice and Hopkins headed in different directions in the sense that Tice recognizes the ability of a quadro to affect a beneficiary designation and Hopkins does not? That's correct. But in the situation there, there was not an irrevocable vesting of the qualified joint survivor annuities in the individuals. Tice doesn't contradict that main argument. What Tice to me seems to say is the logic of Hopkins can't be applied. You can't simply hold up Hopkins and say, follow this, because Tice renounces the logic used in Hopkins with respect to the phrase with respect to. I'm not quarreling with the proposition that you still have an argument with regard to why this plan should produce this result, but I don't think Hopkins is very viable as a support for that given what was said in Tice, because Tice eliminated the logic behind Hopkins and in fact adopted what not any part of the Hawaii Supreme Court, but adopted the same logic used by the Hawaii Supreme Court in its decision. So, well, a lot of cross-cutting here. This is extraordinarily complicated, but my take on Tice is that it pretty well blocks an argument made on Hopkins grounds. So you better give us another reason why we should reach the result that you advocate. And I should say to that as well, given the posture of your client, why it is that the fact that prior litigation shouldn't be applied to bar your client from staying the position it's trying to stay in this case. Well, because of the fact that the orders, all of the orders of the Nevada courts, including the family court and the Nevada Supreme Court, are preempted under 1144A. What you're saying is that the Nevada courts were wrong. Correct. They wrongly decided the issue. That is right. With respect to your client, doesn't Rooker-Feldman prevent us from taking any action in that regard? No, because of the fact that Rooker-Feldman doctrine does not apply to orders or judgments that are preempted by ERISA. Otherwise, there would be no reason for the preemption. And the preemption of ERISA is very, very broad. There's no question about that. But ERISA also seems to recognize in some instances that a proper state court order can modify some terms of an ERISA-governed plan. And the Nevada courts determined that the alteration of beneficiary and the constructive trust were proper, and the Supreme Court wouldn't take the case. Right. But the situation we have, of course, as you know, only about 5% of the writs of certiorari that are petitioned to the United States Supreme Court are granted. The chances of getting one are very, very remote. Do you have any authority to support the proposition that you're offering? As I looked at your brief, I found lots of citations and quotations with regard to the breadth of the ERISA preemption. I didn't find anything that says that Rooker-Feldman doesn't apply in that context. Is there any authority to support that proposition? Well, it's just a matter of logic, that if you've got a preempted order. We hear preemption arguments all the time. We've had a couple of them this week. We get Rooker-Feldman not quite so often. But it would be a little extraordinary if this is the first time the two have collided. Well, we have the situation where the case by Justice Pachter-Hugg, the 3A machine case, which goes into preemption. It also goes into the state of jurisdiction of the district court. And that it would seem logically that if the Nevada courts did not have jurisdiction, which they didn't, this isn't a concurrent jurisdiction case. But see, the premise of every argument that collides with Rooker-Feldman is that the state court was wrong in some way. Otherwise, if the state court was right, there'd be no subsequent argument. So we take as a given in applying doctrines such as Rooker-Feldman, indeed applying all preclusion, claim preclusion, issue preclusion, okay, it may be that the state court or the other court was wrong. You get one chance, and you don't get to go someplace else and complain about it again. Why shouldn't that apply here as it applies in any other circumstance, whether it's claim preclusion or Rooker-Feldman? Well, Rooker-Feldman pertains to final orders or final judgments. The decisions of the Nevada Supreme Court granting an affirmance of what the family court did is not a final order in the sense that after that approval of the constructive trust, then comes this new thing, a qualified domestic relations order, at least that's what it was called, and we have a situation there where those types of orders are not final. In fact, if you read the wording of the way this is worded, it has all kinds of inconsistency. First of all, it says that my client was an alternate payee. There was no quadro pointing her as an alternate payee. She was the beneficiary of a qualified joint survivor annuity, and this goes under 1055 of ERISA. And in this case, all of the cases, every single case that's been cited by the respondents, Mr. Willick and Mrs. Forbes, they cite cases that have nothing to do, do they even mention qualified joint survivor annuities? They talk about insurance. Sure, you can get a quadro and change the insurance, either after retirement or after death of the participant. There's no question about that. That isn't the case here. We have an irrevocable, vested qualified joint survivor annuity in my client's name, and that's totally different than the whole approach. And in this case, we have a situation where many years after Lupe died, we have Lupe resurrected and obtaining a quadro, so-called, by the family court. How can that be? Certainly, Hilton Hotel, they knew in their records, if they ever looked at them, knew that back in 1992 when Lupe retired, five years before they were divorced, he designated my client. And so did the same thing happen with IOTSE. You're now into your two minutes of rebuttal time. I'll take the rebuttal. Thank you for your argument, counsel. My understanding on the other side is that Mr. Willick, you're going to go first? Okay. Okay. And do you want eight minutes on the clock? You can't reserve this one. Go ahead. Ten minutes on the clock. Thank you, Your Honor. My name is Marshall Willick. I represent Judy Carmona, the actual surviving spouse, widow, the adjudicated surviving spouse of Lupe Carmona, the intended beneficiary of the death benefits in question. In footnote six of TICE, this Court left open the question of whether a court could validly enter a quadro after retirement altering the name beneficiary of a joint and survivor annuity or other survivorship benefits. That answer has been provided by the Hawaii Supreme Court in Torres, by the Nevada Supreme Court in Carmona, and by the host of other federal and state opinions that we have cited from across the country. Most important, Congress has chosen to address it. Congress has expressly clarified ERISA, not altered it, clarified ERISA to weigh in on this precise controversy in the Pension Protection Act of 2006 by clarifying that a valid quadro can be entered at any time. That of necessity includes after the retirement of a participant. Any time means any time. It is not a tough interpretation. It's worth noting that the canon of statutory construction to assume that Congress was changing something rather than clarify. I mean, generally speaking, if the answer is clear, then Congress doesn't need to speak, but often Congress is in response to issues that might have been construed incorrectly or correctly under the former law. The difference has to do, and there's a long line of California authority, not so much in Nevada on this, having to do with whether the change in the statutory law is intended to alter a result which was necessarily so, in which case you look at it prospectively, or whether it's intended to clarify and ensure that what the law always was is clearly to show. So what, in your view, gives the indition that Congress is simply clarifying what the law always was? The phrasing of it is a negative, saying that an order is not a quadro under 1056, which is the provision they're talking about, just because it's entered at a later time. I don't have the exact word in front of me, but it's phrased as a negative, indicating that it is not to be construed not to be a quadro, which is IOC's position here. Why they're not honoring the quadro that's been submitted to them is only because of the timing of its submission. They refused, by the way, to talk about the Pension Protection Act of 2006. They don't address it anywhere in their written briefs. They're just hoping that you will not pay any attention to it. But it exists. We could go back to the State court and get a new quadro tomorrow, which would be under that. I mean, if you wanted to go to the whole perspective, retrospective thing, we'd get another order tomorrow which would say exactly the same thing, and that a law would apply as of today. So I don't think that that is relevant. And besides, IOC's own plan says that they can alter any plan benefit upon submission of a quadro. It says so right in their plan documents. That's ICR 44 Exhibit A at 7, number 23. The Department of Labor regulations say exactly the same thing, that a quadro can alter any plan benefit at any time. And that's the exact DOL reg you set out on page 31, note 76 of our brief. All of the primary authorities are in accord on this. There really isn't a significant dispute, at least not in this circuit. The response of our opponents to that authority is to simply ignore those things. They won't talk about the DOL regs. They won't talk about the portion of their plan that says that. They won't talk about the Pension Protection Act. They simply don't address it, and they're hoping that you won't address it. But the authorities say what they say. Lupe, the participant in this case, did everything right. He notified the plan in writing that he wanted to change his beneficiary designation. He got his spouse, who is the person who happened to be married to him on the day that he retired, to waive the benefits. He got the court to reflect in a specific court order that she had waived the benefits. He got a quadro expressly saying that not this person, but my existing surviving spouse and widow, is the intended beneficiary of the survivorship benefits. He got a quadro? Well, I'm his attorney. That's the reason I'm in this case. I continue to be represented. That was my marching orders until he died. I mean, you can't certainly fault him for dying, although they did delay entry of at least one order in this case for four months, specifically waiting for my client to die. But you had a timeline there, and it made it sound as if all of this was done before he died. I'm sorry, Your Honor. I meant no misimpression, but this is a continuity of interest. His interests are quite clear. They're in writing. They're in the record. His intentions are quite clear, and my marching orders have not changed for the 10 years that I have been trying to carry his wishes into effect. This has been a decade, and it's the reason for one of the requests for relief that I'm making here. Nothing more could be asked of the man than what he did. You know, what does the trust do at that point? They've already calculated benefits based on a different person. There is no difference to the trust. The measuring wife can still be Janice's. Mind you, Judy is 20 years older than Janice. So from a perspective in this particular case, there's almost no possibility that they could possibly ever pay a greater actuarial sum. Remember, the reason for these regulations is to protect the validity of the plan's grace so that they can't be overextended. That's why not more an actuarial value, that standard stock phrase. All they have to do is announce that Janice is the measuring wife. Or they could say, oh, boy, we get to save some money. Judy is the measuring wife. It doesn't make any difference. And you'll find a letter from Judy to the plan in the record saying, I don't care. Just pay it into the constructive trust account. The money belongs to me, but I'm not trying to change the measuring wife. I'm not trying to change the plan calculations. I'm not trying to change the amount that you're going to pay. I just want it deposited. Leave the plan's calculation in place. Exactly. Redirect workers. Exactly. And there's a letter from Mr. Siegel saying that he would honor the constructive trust, which he then reneged on when he filed the actions in federal court in the third go-around in federal court. So they've been all over the map. They have reneged on their own agreement that the constructive trust account is the appropriate place to place the plan proceeds. There's no difference to the plan. It makes not a penny's difference. There's not a single piece of paper that they have to lift that they otherwise wouldn't have to lift. All they have to do is do what the state court has ordered. Iotse's and Janice's position boils down to the prospect that none of that matters. Fibers don't matter. Court orders don't matter. Beneficiary designations don't matter. The only thing in the universe that matters is that Janice was the named beneficiary on the day that he retired, and that can't be the law. It can't be the law. Well, in our Hamilton case, we took ERISA to preclude the parties from doing something, and the state court from doing something. It was entirely logical in that context, but our conclusion was ERISA says that's off the boards. What ERISA said in the position that you were talking about in Hamilton is that the only people that can have surviving spouse benefits is either a current spouse or a former spouse. We're not debating any of that. His spouse on the day he died was Judy. That's his surviving spouse. Only a quadro could name somebody else under a legal fiction a surviving spouse, and that didn't happen here. Only thing that Janice has is that she happened to be married to him on the day of his retirement. According to her logic, if my client had been married to Judy for 30 years before the day he retired, divorced Judy, married Janice, was married to her for one day, retired that day, divorced her, remarried Judy, and was married for another 30 years, those 60 years, his intention, his designation, a quadro, none of that makes any difference because of that single day. Given your client's history, to make that hypothetical real, he'd have to be about 300 years old. He went through nine months. These benefits were approved during wife number two. They were his sole and separate property to direct as he sees fit. And this entire case boils down to happenstance. Their case is that the happenstance, that she was married to him on the day that he retired, trumps everything. And that can't be the law. It can't be the law that a law designed to protect surviving spouses makes it impossible to protect a surviving spouse. That cannot be a reasonable interpretation of a risk. Why did it take, why was Lupe unable to obtain a quadro in the five years between, approximately five years between his divorce from Janice's death? That's a matter of state procedural law. As soon as Janice appealed, which she did, the district court lost jurisdiction to entering further orders. We couldn't get the quadros in place until after it went all the way up and came all the way down. And in the meantime, they filed four more actions, the bankruptcy court action, the probate court action, and the first and second federal court actions, all of which stayed and delayed us getting back into court. This has been a holding action for a decade, trying to prevent the money from going where it was intended to go from the get-go. We've been trying to effectuate this beneficiary change designation since 1997. And only their actions have prevented it from happening. I see that my clock ran. Finish the thought. I was going to clarify in terms of answering questions, because this is a little confusing. We've got multiple parties here, that if the Court has questions, counsel and I have agreed that they can be redirected however is most effective to actually answer them. So let's see what happens. Thank you for your argument, Ms. Forbes. And if we direct a question to her that you really shouldn't answer, we'll see how that plays out. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Sherri Ann Forbes. I'm here on behalf of Hilton Hotel Retirement Plan. Move that microphone a little closer, if you will, and speak right up. Is that any better? That's great. Okay. I only actually have a few points to make here. Hilton has absolutely no interest in whether Judy or Janice ultimately gets the survivor benefits from Lupe's retirement plans. I take it your position in a sentence is that you've been ordered by the Nevada courts to recognize the alteration of the beneficiary, and that's a final judgment, and your client doesn't disagree with court orders. Absolutely, Your Honor. That's exactly right. So I will skip discussion of the Rooker-Feldman if that's okay, unless you have questions about that. You will concede it doesn't bind the union? It doesn't. I'm sorry, say that again. It doesn't bind. Rooker-Feldman doesn't prevent IATSE from seeking the relief it wishes. I think that's correct, Your Honor. Yes. So if that's true, then it really doesn't make any difference in this case at all, does it? What doesn't make any difference? In other words, if IATSE prevails and they're entitled to prevail because the federal court has jurisdiction over their claim and they ultimately win, it doesn't make any difference whether Rooker-Feldman applies to anyone else, does it? Well, it wouldn't make any difference in terms of what Hilton has to do with QJSA. However, it does make a difference in that Hilton was only named in the complaint by Janice, and Janice's complaint has been dismissed because of the Rooker-Feldman doctrine. Therefore, us being named in that complaint removes us from having to go back to federal court or wherever else. One point I did want to make, Your Honor, is, and I believe that Mr. Sequel touched on this, and the law, I think, is different than what he had said, was that in addition to the reasons why I think we shouldn't that Hilton shouldn't have to go back to federal court, the allegations that were made against Hilton in Janice's complaint in the federal level were in the breach of fiduciary duty arena. And there are two cases, Ninth Circuit cases, that specifically say that an individual cannot bring breach of fiduciary duties against a plan administrator because their fiduciary duty is to the plan and not to the individual participants. Those cases here in the Ninth Circuit were Williams v. Caterpillar. Were these in your briefing? This was not, Your Honor. Okay. You can describe them if you wish, but at the conclusion of your arguments, you'll see Ms. Baptiste fill out a gun sheet, and the other side will get an opportunity to look at the cases. Okay. Yes, Your Honor. I actually do have the cases with me as well. We generally frown on this. Okay. Do you understand? Yes, Your Honor. I mean, these cases weren't decided yesterday, were they? I don't believe they were, Your Honor. What are the dates of the two cases? One was 1996, and Williams was 1991. There's a lot in law school they call time-honored cases, I guess. Go ahead. Tell us about it. The reason why I bring it up, Your Honor, is because Mr. Siegel did say that his fiduciary duty was to Janice. However, under this case law, the fiduciary duty of a plan administrator is to the plan and not to the individual. So I bring it up to say that that's another reason why Janice's complaint fails against Hilton Hotels and why her appeal should not be granted. So in a nutshell, you think you have peace against the current lawsuit because of Rooker-Feldman and because of what you just told us with regard to fiduciary duty. So whatever else happens on the ERISA issue shouldn't matter because the claim against you should be dead. Correct, Your Honor. But we do agree with Mr. Wilkins' wonderful argument about ERISA. And I can talk about that if you would like. I think Mr. Wilkins did a wonderful job, though. Maybe best not to repeat it or to try to repeat it. That's what I was thinking, Your Honor. Okay. So if you don't have any questions, that's all I have. I don't see anything. Thank you for coming down today. I appreciate your argument. Thank you. Time for a rebuttal. You want to go first? Okay. First of all, Judy Carmona is not a surviving spouse and could never be under ERISA because it's not tested at the time the participant dies. It's tested when he retires. That's the entire basis of the QJSA is to determine upon the annuity start date who will be the surviving spouse. It could never be a future spouse. He conceded the Hamilton case reserved the ability to divide and become treated as a surviving spouse to former spouses. Judy was never Blupe's former spouse. It turns the entire protection. It all builds on surviving as of what time. What is it you want to point us to that makes us say surviving doesn't mean at the time of death, which is probably the more colloquial use of the term, but means specifically a defined term? Who is the spouse at the date of retirement? The person to which the participant is married on the annuity start date is the surviving spouse under an ERISA QJSA. In addition, plans have an option to require one year of continuous marriage before that date. They don't have to, but they can. That's the conclusion you're offering. What do you point to to cause us to say that's what the law requires? It's 29 U.S.C. 1055. The QJSA statute is explicit. This Court's decision in Hamilton is explicit. There's no tension with ties and options. The note in Ties VI says the issue of whether a quadro could do this to a QJSA is reserved for another day. Seehawks, recognizing that the ---- Okay. 1055 in front of me. It's a long statute, and complicated statute. I've read it several times. What part should I be looking at to support the conclusion you're advocating? Thank you. I don't know if I have all sections printed here. You recall in there the discussion of that with spousal consent, the QJSA can be waived during the applicable election period. 1055C7A defines the applicable election period as 90 days before the annuity start date. I don't have the exact site for the optional one-year requirement, but the cases therefore tell us, and Hamilton tells us, that means former spouse as of the annuity start date. It's the only way the protection for the spouse who is married at the time of retirement. The multiple spouse problem can come up in many scenarios. We've got a guy with nine spouses. It could be three. ERISA solves the multiple spouse problem. It says who will be the surviving spouse for this mandated benefit of ours. It will be the spouse on the date of the annuity start date because that provides the clarity to the plan that it needs. By the way, TPA is not responded to by us because we don't argue that there's any timing requirement under a quadro. I've succeeded in having post-death quadros adopted. Timing is not the issue. There's no quadro here. Number one, it was never pursued. There's no counterclaim for it. We've never been sued to enforce a quadro. The constructive trusts don't even satisfy the basic requirements of a quadro. They're not seeking benefits under a quadro. It's sort of an albatross, but there could never be a qualified, a hue. A hue is missing. There's no domestic relation between Janice and Judy. There's no current or former spouse in Judy. She's a future spouse. It calls for a change in ñ it calls for a swapping of the surviving spouse. That's not provided by a plan rule. Your red light's been on for a while, but I do want to ask you one question. Mr. Willick contends that your own plan says its benefits can be altered at any time. What's your response? No, it says that they cannot be changed, alienated, et cetera, et cetera, except in accordance with a QDRO, Qualified Domestic Relations. Your position is this is not? It can't be because she can't be a current or former spouse because she's a future spouse and subsequent widow, and it calls for an alteration in who gets a benefit that does not comply with the plan rule, therefore calls for a change in the actual plan rule. Okay. And would violate Hamilton on the way. All right. David, you have two minutes. I think the problem, of course, having an analyst is the fact that they don't realize that under 1055, qualified joint survivor annuities are mandatory. All pension plans have to have this. And they set forth when these are activated. And they're activated, in this case, by Lupe's retirement back in 1992, five years before they were divorced. He was receiving his portion of the qualified joint survivor annuity all this period of five years. Then he gets divorced, and now he marries Judy. And Judy now wants those benefits. Sure, Lupe tried to get those benefits, but before the divorce, both Janice and Lupe contacted IOTC and Hilton, and they said no way can this be done. It cannot be done under ELISA. And the court orders of Judge Gaston, the family court, are not going to be honored. And that was on the basis of the March 25th, 1988 order that I prepared for the court. And in that, it said that Janice had not waived these rights. And that was the basis of it. And they cite the 1144, that the orders are preempted. You cannot change once it's vested in my client. This case is exactly like the Hopkins case, the Rivers case, the Lash case. All of these cases have been cited. And I believe it's about five circuit courts have ruled on this various thing. And these quadros are preempted. And I submit to the court that they were never adjudicated as being quadros. The fact that the family court issues a quadro doesn't automatically make it a final order, and it can't be changed. And even the wording in the quadro says it's subject to ERISA, it's subject to this, and if you can't do it, we'll do this, we'll do that. It's not a final order. And these things were brought to the court's attention in my complaint, in my complaint. Thank you. Thank you, everyone, for their arguments. It's a fascinating case. We appreciate you coming down and arguing it. It's now submitted. And the court will stand in recess for the day.
judges: Hawkins, Thomas, Clifton